**EXHIBIT #3**

# PROMISSORY NOTE

| | |
|---|---|
| DATE OF NOTE: | June 1, 2007 (the "Effective Date"). |
| LOAN AMOUNT: | $2,235,800.00. |
| MATURITY DATE: | May 1, 2012. |
| INTEREST RATE: | 2.5% per annum. |
| MAKER: | O2 HR, LLC, an Illinois limited liability company. |
| MAKER ADDRESS: | 5050 West Lemon Street, Tampa, FL 33609. |
| HOLDER: | AEM, Inc. dba Mirabilis HR, a Florida corporation. |
| HOLDER'S ADDRESS: | 200 S. Orange Avenue, Suite 2800, Orlando, FL 32801. |

FOR VALUE RECEIVED, O2 HR, LLC, an Illinois limited liability company (the "Maker"), with its principal place of business located at 5050 West Lemon Street, Tampa, FL 33609, promises to pay to the order of AEM INC. DBA MIRABIS HR, a Florida corporation (the "Holder"), located at 200 S. Orange Avenue, Suite 2800, Orlando, FL 32801, or such other place as the Holder may direct, the total principal sum of **TWO MILLION TWO HUNDRED THIRTY FIVE THOUSAND EIGHT HUNDRED AND 00/100 DOLLARS ($2,235,800.00)** (the "Principal") together with interest on the amount of principal outstanding at the rate of Two and Five-Tenths Percent (2.5%) per annum for the Term (as defined herein) of this Promissory Note (the "Note").

This Note shall be payable in sixty (60) monthly payment installments of principal and interest, payable in arrears, pursuant to the purchase price formula as calculated in accordance with the terms and conditions of Section 3.1 of the Purchase Agreement (as defined herein) (the "Installment(s)"). The Installment payments shall commence on June 1, 2007 and continue on the sixth day of each and every month thereafter through and including May 1, 2012 (the "Term" or "Maturity Date"), at which time the entire remaining balance of Principal and all accrued but unpaid interest thereon shall be due and payable in full; provided, however, that the monthly Installment payments shall be subject to adjustment as provided for in Section 3.1 of the Purchase Agreement. Any and all capitalized terms used, but not otherwise defined herein shall have the meanings ascribed thereto in the Purchase Agreement.

1. **Note Conditions.** This Promissory Note (the "Note") is made and entered into in connection with that certain Asset Purchase Agreement, dated of even date herewith (the "Purchase Agreement"), by and between Holder and Maker for the sale of assets of AEM, Inc. d/b/a Mirabilis HR, a Florida corporation (the "Company"). This Note and the Purchase Agreement are collectively the "Purchase Documents". This Note is subject to all terms and conditions contained in the Purchase Agreement, which are made a part hereof and incorporated herein by this reference.

2. **Acceleration of Maturity.** As to this Note, the Maker waives all notice of acceleration, presentment, protest and demand, dishonor and non-payment of this Note, and expressly agrees that the Demand Date or Maturity Date of this Note, or any Installment payment

hereunder, may be extended from time to time without in any way affecting the liability of the Maker. In the event of default in the payment of any of the Installments when due or payment of the entire Principal and any accrued but unpaid interest thereon when due, as provided in this Note, time being of the essence, the Holder of this Note may without notice or demand declare the entire Principal and any accrued but unpaid interest thereon immediately due and payable.

3. **Application of Payments.** Interest to date is due at the time each of the Installments are due. When any payment is made by the Maker to Holder, such payment shall be applied by the Holder first to any penalties due from Maker, next to reimburse any costs or advances hereafter funded by Holder, next to the payment of interest accrued as specified above, and then to the repayment of the Principal sum. All payments shall be made by electronic transfer as directed by Holder. However, if no such directions are given, all payments shall be made to Holder's address above or such other place as Holder designates in writing.

4. **Modification of Note.** The Holder may, with or without notice to the Maker, cause additional parties to be added to this Note, or release any party, or revise, extend, or renew this Note, or extend the time for making any payment provided for in this Note, or accept any payment in advance, all without affecting the liability of the Maker.

5. **Collection Costs.** Should it become necessary to collect this Note through an attorney, the Maker of this Note hereby agrees to pay to Holder all costs and expenses of collections, including, without limitation, reasonable attorneys' fees and costs incurred to represent the Holder in any negotiations, litigation, trial, appeal, bankruptcy, contest, dispute, suit or proceedings and post-judgment proceedings.

6. **Waiver of Rights.** Maker hereby waives: (a) presentment, demand, protest, notice of dishonor and/or protest and notice of nonpayment; (b) the right, if any, to the benefit of, or to direct the application of, any security hypothecated to the Holder until all indebtedness of Maker to the Holder, howsoever arising, shall have been paid; and (c) the right to require the Holder to proceed against the Maker through any legal proceeding, or to pursue any other remedy in the Holder's power.

7. **Grace Period.** Notwithstanding any contrary provision of this Note, Maker will be allowed a grace period of five (5) days on any payment coming due hereunder. Maker will, therefore, not be in default unless Maker fails to make such payment within five (5) days after the Installment payment due date or expiration of the Maturity Date, whichever is sooner.

8. **Default.** Maker shall be in default under this Note, or any of the Purchase Documents, in the event that Maker: (i) fails to pay any Installment or any other indebtedness to Holder when due (whether such amount is due by acceleration or otherwise); (ii) fails to perform any obligation or breaches any warranty, representation, obligation or covenant to Holder under any of the Purchase Documents; (iii) allows any Collateral (as defined herein) secured by the security agreement for this Note to be destroyed, lost or stolen, or damaged in any material respect; (iv) permits the entry of service of any garnishment, judgment, tax levy, attachment or lien against the Collateral; (v) dies, becomes legally incompetent, is dissolved or terminated, ceases to operate its business, becomes insolvent, makes an assignment for the benefit of creditors, or becomes the subject of any bankruptcy, insolvency or debtor rehabilitation proceeding; or (vi) causes Holder to deem itself insecure in good faith for any reason whatsoever. In the event the Maker shall fail to make any payment of the Installments of Interest or Principal, as applicable, within five (5) days after the due date thereof, then Maker shall incur a late charge equal to two percent (2%) per month of any such late amount. After default, under this Note, so long as such default remains uncured,

/s/ _____
Maker

the Maker shall pay Interest on any unpaid Principal to the Holder of this Note at a fixed rate equal to the lesser of the highest rate allowable by law or Eighteen Percent (18%). Interest shall be computed on the basis of a 365 day year based on the actual number of days elapsed. Time is of the essence for all timeframes and payments contained under this Note. Notwithstanding anything contained herein with regard to the payment of late charges or interest, Holder shall have the immediate right to exercise all remedies available to Holder, whether contained in this Note, at law or in equity.

9. **Prepayment.** Maker will have the right to prepay this indebtedness in whole or in part at any time or times without premium or penalty; provided, however, that at the time of prepayment Maker is not in default of any obligation under this Note or the accompanying Purchase Documents, if any, and further provided that at the time of the prepayment Maker also pays all unpaid interest accrued hereunder. If Maker shall prepay any portion of the indebtedness, after application of said prepayment pursuant to Section 2, the remainder, if any, shall be applied to reduce the Principal. Provided however, any prepayment of less than the entire balance due shall not operate to relieve the Maker from its obligation to make the next scheduled Installment payment and the remaining balance shall not be reamortized over the remaining term without the express written consent of the Holder.

10. **Forbearance Not Waiver.** If Holder forbears from requiring strict adherence to any of the terms of this Note or allows late or partial performance of any of Maker's obligations (including, without limitation, late or partial payments), regardless of the length of time that Holder so forbears or allows late or partial performance, Holder will not be deemed to have thereby waived, or to be estopped from enforcing, its right thereafter to require strict adherence to all of the terms of this Note, nor Holder's right to accelerate payments, to foreclose any accompanying liens, or exercise other remedies for Maker's failure to adhere strictly to, and perform timely and fully, all of the requirements hereof. No patterns of conduct follows or allowed by Holder will be deemed a waiver of any of Holder's rights.

11. **Compliance With Usury Laws.** All agreements between the Holder and the Maker are hereby expressly limited so that, in no event, shall the amount paid or agreed to be paid to the Maker for the use, forbearance, or detention of the money to be loaned under this Note exceed the maximum amount permissible under the laws of the State of Florida. If, at the time of any interest payment, the payment amount due under this Note is in excess of the legal limit, the obligation shall be reduced to the legal limit. If the Holder should ever receive as interest, an amount that exceeds the highest lawful rate, the amount that would be excessive as interest shall be applied to the reduction of the Principal amount owing under this Note, and not to the payment of interest.

12. **Governing Law.** This Note has been made and delivered in the State of Florida, and this Note shall be construed in accordance with the laws of the State of Florida. In any action in connection with or to enforce this Note, the Maker agrees to venue and jurisdiction as set forth in accordance with the terms of the Purchase Documents.

13. **Cumulative Remedies.** If there is a default under this Note, Holder shall be entitled to exercise one or more of the following remedies without notice or demand (except as required by): (i) to declare Maker's obligations under this Note and the Purchase Documents immediately due and payable in full; (ii) to collect the outstanding obligations under this Notes with or without resorting to judicial process; and, (iii) to exercise all other rights available to Holder under the Purchase Documents or any other agreement or applicable law. The rights, remedies and powers of Holder as provided herein or in any other document securing or related to this Note, shall be cumulative and concurrent, and may be pursued singly, successively or together,

_/ß_
Maker

at the sole discretion of Holder, and may be exercised as often as the occasion therefor shall arise. No act of omission or commission of Holder, including specifically any failure to exercise any right, remedy or recourse, shall be effective as a waiver thereof unless it is set forth in a written document executed by Holder, and then only to the extent specifically recited therein. A waiver or release with reference to one event shall not be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse as to any subsequent event.

14. <u>Waiver of Jury Trial</u>. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY.

15. <u>Miscellaneous</u>. This Note and the Purchase Documents constitute the entire agreement between the Holder and Maker and supersedes, replaces and terminates all prior negotiations, communications, discussions and correspondence concerning the subject matter hereof. The unenforceability or invalidity of any provision of this Note shall not affect the enforceability or the validity of any other provision herein and the invalidity or unenforceability of any other provision of this Note. This Note may be amended or modified only in writing signed by each party hereto. This Note shall be binding upon and inure to the benefit of Maker and Holder and their respective successors, assigns, heirs and personal representatives. No obligations of the Maker hereunder can be assigned without the prior written consent of Holder.

THIS NOTE AND ANY OTHER PURCHASE DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. ANY AND ALL STATE OF FLORIDA DOCUMENTARY TAX AND INTANGIBLE TAX REQUIRED BY LAW HAVE BEEN OR WILL BE PAID BY MAKER CONTEMPORANEOUSLY WITH THE EXECUTION OF THIS NOTE.

MAKER:

O2 HR, LLC, an Illinois limited liability company

Signature: /s/
By: Himes J. Bean
Its: Manager